UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRANGE CONSULTING GROUP and PAUL PARMAR,<br><br>*Plaintiff,*<br><br>v.<br><br>DAVID BERGSTEIN, PINEBOARD HOLDINGS, INC., ROBERT B. SILVERMAN, ALBERT HALLAC, JEFFREY HALLAC, LAWRENCE TWERSKY, WESTON CAPITAL MANAGEMENT LLC, SOVRIN HEALTH SYSTEMS, INC., ALEX M. WEINGARTEN and WEINGARTEN BROWN LLP<br><br>*Defendants.* | Civil Action Entry 13-cv-06768 (PGS)<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on a motion to dismiss the Complaint against Defendants David Bergstein ("Bergstein") and Robert B. Silverman ("Silverman") (collectively "Defendants") for failure to state a claim based on various arguments. Those grounds are: (a) to compel arbitration and stay the matter on all ten counts; (b) dismiss counts one and two due to a release provision in an agreement, (c) dismiss counts four and five because the tort of economic duress is not recognized as an independent cause of action in New Jersey; and (c) dismiss count ten for failure to plead allegations sufficient to state a cause of action for tortious interference with contract. (Dkt. Entry 45).

I.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6),

the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are

true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

II.

In this motion, the chief argument centers on the arbitration clause contained in a document entitled "Purchase Agreement and Amendment" ("Amended Purchase Agreement") between Pineboard Holdings, Inc. ("Pineboard") and an affiliated health care technology company associated with Paul Parmar ("Parmar") in which Pineboard purchased the assets of MD Tablet.

According to Bergstein and Silverman, the Amended Purchase Agreement clarifies that the assets purchased by Pineboard include:

> "all assets and properties of MD Tablet, including . . . all underlying software licenses, intellectual property, trade secrets, confidential information, accounts receivable, deposits, leases, hardware, furniture, fixtures, equipment, customer lists, and the Patient Portal, MD Tablet and all other proprietary software, templates, modules, customization and components developed by any Seller or any Affiliate at any time within the ten (10) years immediately prior to the Effective Date which involves or relates to medical information technology.

From a review of the Complaint, Plaintiffs sue Bergstein on ten counts, but counts six through nine concern misappropriation of trade secrets, which include medical information and technology. Within the Complaint, Plaintiffs categorize the information seized by Pineboard as "business data compilations, programs, methods, techniques, plans and procedures for medical data and information. (ECF 1 at ¶ 55). In comparing the language of the Complaint (counts 6 through 9) to the relevant provision within the Amended Purchase Agreement, those counts involve the same assets as identified in the Amended Purchase Agreement. The Amended

Purchase Agreement provides that such disputes will be resolved by arbitration so long as one of the parties requests same. Section 5.16 of the Purchase Agreement provides, in relevant part:

> Mandatory Arbitration, Waiver of Jury Trial. At the request of either party, any dispute, claim or controversy of any kind (whether in contract or tort, statutory or common law, legal or equitable) now existing or hereafter arising between the parties and in any way arising out of, pertaining to or in connection with: (1) this Agreement, and/or any renewals, extensions, or amendments thereto; (2) any of the agreements entered into among the parties as contemplated hereby, including the Parmar Agreement, (3) any violation of this Agreement; (4) all past, present and future dealing between the parties respecting the transactions contemplated by this Agreement, (5) any incidents, omissions, acts, practices or occurrences arising out of or related to this Agreement causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or (6) any aspect of the present or future relationships of the parties, will be resolved through final and binding arbitration conducted at a location determined by the arbitrator in the State of California, and administered by the American Arbitration Association ("AAA") in accordance with the then existing Commercial Rules of the AAA. Judgment upon any award rendered by the arbitrator(s) may be entered in any state or federal courts having jurisdiction thereof.

Defendants argue that the entire matter should be resolved through arbitration. But the arbitration clause hones in on the misappropriation of trade secrets, which concerns only counts six through nine. As such, the arbitration clause may only be applied to those counts.

Plaintiffs disagree with the argument that the arbitration clause within the Amended Purchase Agreement applies because they contend that the contract is unconscionable, and "unconcionability" is a question of law for the Court to decide initially. That is, if Plaintiff is suffering from duress, he cannot reasonably decide or have the capability to form a judgment. This is a gateway issue for the court to determine in the first place. See, *Sutter v. Oxford Health*, 675 F.

3d 215 (3d Cir. 2012) *cert. granted* 133 S. Ct. 786 (2012). Despite the Plaintiff's contention that the unconscionability of the contract is a gateway issue, the Court usually looks to the more narrow issue of whether there is a challenge to the arbitration clause itself. *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007). "Accordingly, to defeat [a] motion to compel arbitration, plaintiff must show that the arbitration agreement itself, and not the Amended Purchase Agreement, is unconscionable and, therefore, unenforceable." *Tantillo v. CitiFinancial Retail Services, Inc.*, 2013 WL 622147, at *6 (D.N.J. Feb. 19, 2013) (quotation and citation omitted); *see also, e.g., Doug Brady, Inc. v. New Jersey Building Laborers Statewide Funds*, 2009 WL 349147, at *2 (D.N.J. Feb. 11, 2009) ("only narrow challenges to the arbitration provisions may be considered by the courts in the first instance; all other challenges to contracts containing arbitration agreements must first be considered by the arbitrator") (citing *Buckeye Check Cashing*, 546 U.S. at 444; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967); *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)). Here, the narrower arbitration issue does not involve the issue of unconscionability so as to require that the Court vacate the arbitration provision.

Moreover, when "the parties intend to arbitrate, their agreement should be applied to claims against agents or entities related to the signatories." *Pritzker v. Merrill Lynch*, 7 F. 3d 1110, 1122 (3d Cir. 1993). As such, the arbitration clause applies to Bergstein and Silverman, who were

affiliated with the Amended Purchase Agreement. Therefore counts six through nine of the complaint against Bergstein and Silverman are referred to arbitration.

III.

Bergstein argues that Count 1, alleging fraud in the inducement, should be dismissed because of a release provision set forth in the Amended Purchase Agreement, and that Count II, which alleges fraud, but seeks punitive damages, should be dismissed as well. This argument lacks merit. The Amended Purchase Agreement dealt with the sale of the assets of MD Tablet to Pineboard. The fraudulent activities enumerated in the complaint go far beyond the MD Tablet transaction. The Plaintiff summarized the activities subject to this law suit.

(a) a $10 million bridge loan for the film "Before the Devil Knows Your Dead";

(b) a $9 million loan for the film "Black Water Transit";

(c) a $2.5 million loan for the film "Fade Out";

(d) a $3 million loan for the acquisition of the "De Lane Lea" post-production facility in London;

(e) a $7.5 million loan for working capital;

(f) a $5 million loan for the acquisition of the "Sheridan Square" UK-based music company;

(g) a $4.5 million loan for acquisition of a collection of motion picture distribution rights known as the "Intermedia Library"; and

(h) a $2.75 million loan for the production of the film "Love Ranch."
(Verified Complaint at ¶¶ 33-40).

When reading the Amended Purchase Agreement, one cannot conclude that Parmar or a related entity released and relinquished all of their rights with regard to all of the claims listed above. Although the release is broad, it does not specifically refer to the loans listed. The release reads:

> Except for the obligations to be undertaken in this Agreement, each of the Parties ... hereby fully, irrevocably, without condition, reservation or exception, abandons all claims, rights and privileges and forever releases, acquits, covenants not to sue and discharges each of the other Parties, and each of their respective ... owners, shareholders, officers, directors, ... employees, representatives, ... servants ... agents ... from any and all claims ... of every character, nature, kind or description whatsoever ... arising out of, or relating to, any act or omission, fact or circumstance, whatsoever which they ever had, now have or may hereafter acquire, by reason of any matter, cause, event, action, inaction, or things whatsoever occurring or arising at any time prior to the Effective Date.

Without a specific reference to the loans within the release, no one could reasonably construe the release to bar all of these allegations, especially when the release is nestled into the Amended Purchase Agreement which concerns the sale of the assets of MD Tablet to Pineboard. As such, the motion to dismiss counts on and two is denied.

Defendants argue that the tenth count, alleging tortious interference with the contract, should be dismissed because any employment contract should have been terminated on the day of the closing of the Amended Purchase Agreement. Defendants contend that since the incident occurred more than a month after closing of the Amended Purchase Agreement, there was no existing contract between Parmar and Grange because the terms of the Amended Purchase Agreement required termination of any contract. Despite defendants' contention, Ganger remained employed during the time in which the computers were seized. On a motion to dismiss,

one takes Plaintiffs allegations as true; hence Defendants attempt to substitute their facts for those set forth in the Complaint. As such, the motion is denied.

The Defendant contends that counts four and five should be dismissed because New Jersey law does not recognize economic duress as an independent cause of action. New Jersey's Supreme Court has noted that there are circumstances "under which economic pressure may invalidate an otherwise enforceable contract." This appears to be an affirmative defense rather than a cause of action. *Kare Distribution, Inc. v. Jam Labels and Cards LLC*, Civ. No. 09-00969, 2009 WL 3297555, at *6 (Oct. 9, 2009) (quoting *Continental Bank of Pa. v. Barclay Riding Acad., Inc.*, 93 N.J. 153, 175 (N.J. 1983)). In *Continental Bank*, the court discussed the doctrine of economic duress as it applies to arm's length business transactions, and stated that a party must establish two elements to prove economic duress: "(1) [t]he party alleging economic duress must show that he has been the victim of a wrongful or unlawful act or threat, and (2) [s]uch act or threat must be one which deprives the victim of his unfettered will." *Id.* (quoting *Continental Bank*, 93 N.J. at 176) Again, it is asserted as a defense and the "wrongfulness of the pressure exerted" is a "decisive factor" in the economic duress analysis. *Id.* (quoting *Continental Bank*, 93 N.J. at 177).

The Court, in *Continental Bank,* explained that, in determining whether a party acted wrongfully, there is not a simple formula to apply, but certain general principles provide guidance:

> When there is adequacy of consideration, there is generally no duress. . . . Whenever a party to a contract seeks the best possible terms, there can be no rescission merely upon the grounds of "driving a hard bargain." Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion. . . . Under this rule, the party exerting pressure is scored only for that for which he is alone responsible.

*Id.* Thus, the fact that one party may have the "upper hand" in negotiations does not, without more, mean that the other party's agreement to a demand constitutes economic duress. Notably, the district

court in *Kare Distribution* denied the plaintiff's motion to dismiss the defendants' counterclaim for economic duress.

However, in a more recent decision, a New Jersey district court squarely addressed the issue of the availability of economic duress as an independent cause of action. In *Lindenberg v. Arrayit Corp.*, Civ. No. 14-cv-833, 2014 WL 3854078, at * (D.N.J. Aug. 6, 2014), the district court observed that, while New Jersey courts recognize the doctrine of economic duress as grounds for invalidating an otherwise enforceable contract, it is not recognized as an affirmative tort action. (citing *Cont'l Bank of Pa. v. Barclay Riding Academy*, 93 N.J. 153, 175-76 (N.J. 1983) and *Nat'l Amusements, Inc. v. N.J. Tpk. Auth.*, 261 N.J. Super. 468, 479 (Law Div. 1992), *aff'd*, 275 N.J. Super. 134 (App. Div. 1992)). ("Although New Jersey courts recognize economic duress as a defense or a basis for contract rescission, the courts do not yet recognize economic duress as an affirmative tort action in New Jersey."). *See also American Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.*, Civ. No. 11-cv-1279, 2011 WL 3022243, at *7 (D.N.J. July 22, 2011). As such, Counts four and five are dismissed.

## ORDER

This matter is before the Court on a motion to dismiss the Complaint as to Defendants David Bergstein and Robert B. Silverman (Dkt. Entry 45) and the Court having reviewed the submissions of the parties; and for good cause shown;

**IT IS** on this 3rd day of November, 2014;

**ORDERED** that the motion to dismiss the Complaint against Bernstein and Silverman is granted in part and denied in part; and it is further

ORDERED that the motion to compel arbitration by Bernstein and Silverman is granted, and counts six through nine are administratively terminated during the pendency of arbitration; and it is further

ORDERED that the motion to dismiss counts one, two, four, five and ten against Bernstein and Silverman are denied.

PETER G. SHERIDAN, U.S.D.J.